UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MERI FRANCIS** | : | Case No. 1:23-cv-767 |
| 48 Woodland Hills Dr., Apt. 4 | : | |
| Southgate, KY 41071 | : | Judge |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **CINCINNATI CHILDREN'S** | : | |
| **HOSPITAL MEDICAL CENTER** | : | |
| 3333 Burnet Ave. | : | |
| Cincinnati, OH 45229 | : | |
| | : | |
| Defendant. | : | |

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Meri Francis, for her Complaint against Defendant Cincinnati Children's Hospital Medical Center, states as follows:

### I.  PRELIMINARY STATEMENT

1. This is a civil rights action arising out of Plaintiff Meri Francis's employment with Cincinnati Children's Hospital Medical Center.  Ms. Francis alleges that she was unlawfully terminated because of her national origin and for opposing workplace discrimination on the basis of her national origin.

2. Ms. Francis's claims arise under Title VII of the Civil Rights Act of 1964, the Ohio Civil Rights Act, and 42 U.S.C. § 1981.

3. Ms. Francis seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for both her economic and non-economic injuries.  She also

1

seeks punitive damages, equitable relief in the form of reinstatement or front pay, and her reasonable attorney fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by Title VII and 42 U.S.C. § 1981. This Court may assume supplemental jurisdiction over Ms. Francis's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as her federal claims.

5. Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

6. Plaintiff Meri Francis is a United States citizen and a resident of Campbell County, Kentucky. Ms. Francis was employed as an administrative assistant at Cincinnati Children's Hospital Medical Center.

7. Defendant Cincinnati Children's Hospital Medical Center ("CCHMC") is a not-for-profit children's hospital located in Cincinnati, Ohio. CCHMC is an "employer" as that term is defined in Title VII and the Ohio Civil Rights Act.

## IV. ADMINISTRATIVE HISTORY

8. On September 13, 2022, Ms. Francis filed an administrative charge of discrimination against CCHMC with the Equal Employment Opportunities Commission (Charge No. 473-2022-02013). She alleged that she was discriminated against because of her national origin and retaliated against for opposing such discrimination. The EEOC issued a Notice of Right to Sue on August 25, 2023.

9. Ms. Francis has filed suit within 90 days of receiving that notice.

## V.  STATEMENT OF THE CASE

10.     Ms. Francis worked for CCHMC for approximately 14 years.

11.     For the majority of her employment, she worked in the Pediatric Intensive Care Unit as a health unit coordinator.  She regularly received positive performance reviews in that role.

12.     Ms. Francis was born in the Republic of Georgia.  She was educated in the Republic of Georgia and in the United States, where she obtained an MBA.

13.     Ms. Francis speaks English fluently, though she speaks with an accent.

14.     In late 2021, Ms. Frances applied for a position as an administrative assistant in CCHMC's research department.

15.     After interviewing for the position, CCHMC selected Ms. Francis to fill it.  She started in the new role on January 10, 2022.

16.     At the time CCHMC selected Ms. Francis for the role, it knew that she did not have experience performing many of the duties of the role.

17.     During the interview process, CCHMC informed Ms. Francis that learning the new position would take approximately six months and that she would work closely with a current administrative assistant, Angela Caruso, in order to acclimate.

18.     At the same time CCHMC hired Ms. Francis for the administrative assistant position, it was also in the process of filling the position that would supervise Ms. Francis.

19.     On February 7, 2022, Keri Davidson Pinger became Ms. Francis's manager.

20.     During Ms. Francis's first few months in the new role. She was learning the new tasks at a pace that appeared to be acceptable.  For example, the expense reports and check requests that Ms. Francis processed were not normally questioned or rejected.

21. On April 20, 2022, during a weekly meeting with Davidson Pinger, she told Ms. Francis that she did not think Ms. Francis had the skills for the job and specifically referenced Ms. Francis's communication skills. Ms. Francis asked Ms. Davidson Pinger for examples of poor work performance. Ms. Davidson Pinger was unable to provide Ms. Francis with any examples, but said that she would speak with CCHMC's human resources department and get back with Ms. Francis.

22. On April 27, 2022, Ms. Davidson Pinger met with Ms. Francis again and, this time, had come up with examples of Ms. Francis's alleged poor performance. They included: 1) asking too many questions about CCHMC's Kronos system; and 2) unspecified problems with Ms. Francis's check requests and expense reports.

23. Ms. Francis responded that the criticisms of her performance were not warranted and that she believed she was being discriminated against because she is from Georgia.

24. Thereafter, Ms. Davidson Pinger began rejecting check requests and expense reports Ms. Francis completed. Ms. Davidson Pinger had, to date, not been doing so with any frequency.

25. Ms. Francis asked Ms. Davidson Pinger for a 360 review, which would solicit feedback from a number of different people Ms. Francis supported.

26. Initially, Ms. Davidson Pinger refused to provide one. After Ms. Francis persisted, however, Ms. Davidson Pinger agreed.

27. The feedback from the 360 review was largely positive, except for that from Angela Caruso, who was supposed to be training Ms. Francis.

28. Caruso often made derogatory comments about the accents of various people in the research department, which is comprised of many people of diverse backgrounds.

29.     On May 8, 2022, Ms. Davidson Pinger placed Ms. Francis on a 30-day performance improvement plan. As part of that plan, Ms. Davidson Pinger claimed that Ms. Francis had not improved since receiving negative feedback.

30.     However, the first time Ms. Davidson Pinger had informed Ms. Francis that she was not meeting the expectations of the position in any substantive way was just days earlier on April 27, 2022.

31.     Ms. Francis told Ms. Davidson Pinger that she believed the performance improvement plan was discriminatory based on her Georgian heritage.

32.     On June 8, 2022, at the conclusion of the 30-day performance improvement plan, Ms. Davidson Pinger notified Ms. Francis that CCHMC was terminating her from her position.

33.     CCHMC allowed Ms. Francis 30 days to find an internal position.

34.     Ms. Francis applied for several open positions at CCHMC, but CCHMC did not hire her for any of the positions. CCHMC terminated her employment.

35.     As a direct and proximate result of Defendant's actions, Ms. Francis has suffered and will continue to suffer damages from lost income and benefits, emotional distress, and damage to her professional reputation.

## VI. STATEMENT OF THE CLAIMS

### Count 1: Racial Discrimination
### (42 USC § 2000e, 42 U.S.C. § 1981, and Ohio Rev. Code § 4112.02)

36.     Plaintiff incorporates the previous paragraphs as if fully rewritten herein.

37.     Ms. Francis was born in the Republic of Georgia.

38.     CCHMC was aware of Ms. Francis's national origin.

39.     Ms. Francis is qualified to perform her position.

40. CCHMC terminated Ms. Francis.

41. There is a causal connection between Ms. Francis's national origin and her termination.

42. As a result of CCHMC's illegal actions, Ms. Francis has suffered damages including lost wages and emotional distress.

43. CCHMC acted with malice and a conscious disregard for Ms. Francis's federally protected rights.

## Count 2: Retaliation
### (42 USC § 2000e, 42 U.S.C. § 1981, and Ohio Rev. Code § 4112.02)

44. Plaintiff incorporates the previous paragraphs as if fully rewritten herein.

45. Ms. Francis engaged in protected activity when she complained about discrimination on the basis of her national origin.

46. CCHMC was aware of Plaintiff's protected activity.

47. CCHMC terminated Ms. Francis.

48. There is a causal connection between Ms. Francis's termination and her protected activity.

49. As a result of CCHMC's illegal actions, Ms. Francis has suffered damages including lost wages and emotional distress.

50. CCHMC acted with malice and a conscious disregard for Ms. Francis's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, Ms. Francis demands judgment against Cincinnati Children's Hospital Medical Center as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Francis in an amount to be determined at trial, plus interest;

2. An award of compensatory damages for all non-economic damages suffered by Ms. Francis in an amount to be determined at trial;

3. For an order reinstating Ms. Francis to her previous position at CCHMC, inclusive of all pay increases and benefits to which she would have been entitled had she not been terminated, or in the alternative, an award of front pay;

4. For an award of punitive damages in an amount to be determined at trial;

5. For an award of Ms. Francis's reasonable attorney fees and costs;

6. For an award of any other relief in law or equity to which Ms. Francis is entitled under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com

*Counsel for Plaintiff Meri Francis*

## JURY DEMAND

Plaintiff Meri Francis demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Brian J. Butler
Brian J. Butler